**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-03406-PAB-NYW

DENNIS CERECERES,

     Plaintiff,

v.

WALGREEN CO d/b/a WALGREENS 10308 S PPT,

     Defendant.

---

## ORDER ON MOTION TO STRIKE

---

Magistrate Judge Nina Y. Wang

     This matter is before the court on the Motion to Strike Portions of Defendant's Fifth Supplemental Expert Disclosures (the "Motion" or "Motion to Strike") [Doc. 47, filed January 13, 2022].  The Motion was referred to the undersigned pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated December 7, 2020, [Doc. 20], and the Memorandum dated January 13, 2022. [Doc. 49].  Upon review of the Motion, the related briefing, and applicable case law, the Motion to Strike is respectfully **DENIED**.

## BACKGROUND

     This case arises out of injuries sustained by Plaintiff Dennis Cereceres ("Plaintiff" or "Mr. Cereceres") on June 14, 2019 while making a delivery to a Walgreens store in Loveland, Colorado. [Doc. 5 at ¶ 1].  Mr. Cereceres alleges that a Walgreens employee "negligently, carelessly, or recklessly operated a loading-dock door" at the store, "causing the door to fall on Plaintiff's head, resulting in injuries, damages, and losses to Plaintiff."  [*Id.* at ¶ 9].  As a result, Plaintiff initiated this civil action against Walgreen Co d/b/a Walgreens 10308 S PPT ("Defendant" or "Walgreens") in the District Court for Arapahoe County, Colorado on October 19, 2020, asserting one claim of

premises liability under Colo. Rev. Stat. § 13-21-115 and one claim of negligence. [*Id.* at 1, 5, 8]. Defendant removed this action to federal court on November 17, 2020. [Doc. 1].

This court entered a Scheduling Order on February 4, 2021. [Doc. 25]. In that Order, the court set the deadlines for affirmative expert designations to August 20, 2021 and the deadline for rebuttal expert designations to September 17, 2021. [*Id.* at 7]. After granting a motion to modify the Scheduling Order, *see* [Doc. 44; Doc. 46], the court set the discovery deadline in this case for January 10, 2022. [Doc. 46]. Plaintiff asserts that at approximately 4:00 p.m. on January 10, 2022, Defendant served on Plaintiff its Fifth Supplemental Expert Disclosures "with four supplemental reports from three [of Defendant's] retained experts." [Doc. 47 at 1]. Plaintiff subsequently filed the instant Motion to Strike, arguing that Defendant's supplemental expert reports violate Rule 26 of the Federal Rules of Civil Procedure and should thus be stricken. [*Id.* at 1-2]. Defendant responded in opposition to the Motion, arguing that because its supplemental expert reports were served on Plaintiff prior to the expiration of the discovery deadline, they were timely. [Doc. 57 at 2]. Moreover, Defendant asserts that the supplemental expert reports appropriately supplement the experts' initial reports because the supplemental reports are based on information that was only recently disclosed by the Plaintiff and which was not available at the time of the submission of the experts' prior reports. [*Id.* at 2]. Plaintiff has since filed a Reply. [Doc. 60]. The Motion is thus ripe for disposition, and I consider the Parties' arguments below.

## LEGAL STANDARDS

### I.    Rule 26

Rule 26(a)(2) of the Federal Rules of Civil Procedure provides that a party must disclose to all other parties the identity of any person who may be used at trial to present evidence under Rule 702, 703, or 705 of the Federal Rules of Evidence. Fed. R. Civ. P. 26(a)(2)(A). With respect

to expert witnesses, the Rule further provides that "[u]nless otherwise stipulated or ordered by the court, . . . the disclosure must be accompanied by a written report . . . if the witness is one retained or specially employed to provide expert testimony in the case." Fed. R. Civ. P. 26(a)(2)(B). This expert report must include (1) a complete statement of all of the witness's opinions; (2) the facts or data considered by the witness in forming those opinions; (3) any exhibits that will be used to summarize or support the opinions; (4) the witness's qualifications; (5) a list of other cases in which the witness testified as an expert in the last four years; and (6) a statement of the compensation to be paid to the expert witness. Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi).

The Federal Rules impose a duty on parties to supplement their expert reports if a party learns that their disclosures are incomplete or incorrect in some material respect and if the additional or corrective information has not otherwise been made known to the opposing party during the discovery process or in writing. Fed. R. Civ. P. 26(e)(1)(A). "The obligation to supplement arises when the disclosing party reasonably should know that its prior [expert disclosures] are incomplete." *Jama v. City & Cty. of Denver*, 304 F.R.D. 289, 299-300 (D. Colo. 2014). "Permissible supplementation under the Rules . . . 'means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.'" *Seidman v. Am. Fam. Mut. Ins. Co.*, No. 14-cv-03193-WJM-KMT, 2016 WL 9735768, at *4 (D. Colo. May 26, 2016) (quoting *Cook v. Rockwell Intern. Corp.*, 580 F. Supp. 2d 1071, 1169 (D. Colo. 2006)); *see also Arrington v. Chavez*, No. 12-cv-00172-LTB-KLM, 2014 WL 1874842, at *2 (D. Colo. May 9, 2014) (observing that new information that was previously unavailable to a party may form a proper basis for the supplementation of an expert report). However, Rule 26(e) is "not intended to provide an extension of the expert designation and report production deadline" and may not be used for that purpose. *Metro Ford Truck Sales,*

*Inc. v. Ford Motor Co*., 145 F.3d 320, 324 (5th Cir. 1998).  The moving party bears the burden of establishing a Rule 26(e) violation.  *Curtis v. Lever Up Inc.*, No. 20-cv-01873-DDD-NYW, 2021 WL 5498301, at *7 (D. Colo. Nov. 24, 2021).

## II.     Rule 37

Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that if a party fails to provide information or identify a witness as required by Rule 26(a) or Rule 26(e), "the party is not allowed to use that information or witness to supply evidence on a motion, at hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  The determination as to whether a Rule 26 violation is justified or harmless is entrusted to the broad discretion of the court.  *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).  In exercising this discretion, the court's analysis is guided by the following four factors: (1) the prejudice or surprise to the impacted party; (2) the ability to cure the prejudice; (3) the potential for trial disruption; and (4) the erring party's bad faith or willfulness.  *Id*.  In seeking to avoid a preclusion sanction, the non-moving party bears the burden of showing the Rule 26(e) violation was substantially justified or harmless.  *Poitra v. Sch. Dist. No. 1 in the Cty. of Denver*, 311 F.R.D. 659, 668 (D. Colo. 2015).

"While Rule 37(c)(1) is written in mandatory terms, it also vests the court with discretion to impose 'other appropriate sanctions' in addition to or in lieu of an order striking witnesses or evidence not properly disclosed." *Id.*; *see also* Fed. R. Civ. P. 37(c)(1)(C).  "A trial court has considerable discretion to determine an appropriate sanction under Rule 37 and the particular circumstances of a given case." *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01-cv-01644-REB-CBS, 2010 WL 502721, at *17 (D. Colo. Feb. 8, 2010); *see also Bedford v. Nowlin*, No. 20-7070, 2021 WL 3148953, at *3 (10th Cir. July 26, 2021).

## ANALYSIS

### I.  Whether a Rule 26 Violation Occurred

Before considering whether Defendant's supplemental expert reports should be stricken, the court must first determine whether those reports violate Rule 26.  Mr. Cereceres argues that Walgreens has violated Rule 26 in three respects: first, by serving two supplemental expert reports from Alison Fall, M.D., discussing certain information that Plaintiff asserts had been in Defendant's possession for months prior to the supplemental disclosures, [Doc. 47 at 4]; second, by serving a supplemental report from Bruce L. Morgenstern, M.D., which discusses medical records which Plaintiff maintains had been in Defendant's possession months prior to the report being served, [*id.* at 6]; and third, by serving a supplemental report from Cynthia Bartmann, which Plaintiff asserts is based on information that "had been in Walgreens' possession for months" and "is a blatant attempt to shore up [Ms. Bartmann's] questionable and unreliable opinions following her deposition." [*Id.* at 7].  The court addresses each of these experts' supplemental reports in the context of Rule 26 below.

#### A.  Dr. Fall's Supplemental Reports

Walgreens disclosed Dr. Fall as a rebuttal expert on September 17, 2021.  [Doc. 47 at 4; Doc. 48-3].  Dr. Fall was then deposed on November 30, 2021, at which time Dr. Fall stated that as of that date, she had not drafted any additional expert reports but had reviewed Plaintiff's rebuttal expert reports.  [Doc. 47 at 4; Doc. 48-4 at 13:17-25].  On January 10, 2022, Defendant then served on Plaintiff two supplemental expert reports from Dr. Fall—one dated December 29, 2021 (the "December Report") and the other dated January 6, 2022 (the "January Report").  [Doc. 48-2 at 1, 7].

Plaintiff takes issue with only specific portions of Dr. Fall's supplemental reports, which he asserts "discuss information that has been in Walgreens' possession for months and which [Walgreens] apparently failed to timely provide to its own expert." [Doc. 47 at 4]. Specifically, Plaintiff asserts that to the extent Dr. Fall's December Report discusses medical records produced in Plaintiff's Twelfth Supplemental Disclosures (the "Thornton Fire Department records"), which were produced to Defendant on September 22, 2021, *see* [Doc. 48-14 at 11], this portion of the supplemental report is untimely because there was no reason for "Walgreens to wait over three months, and after Dr. Fall had been deposed, to disclose a supplemental report discussing these records." [*Id.* at 5]; *see also* [Doc. 48-2 at 1 (Dr. Fall's supplemental report discussing the Thornton Fire Department records)]. In addition, Plaintiff argues that Dr. Fall's January Report is untimely insofar as it discusses the initial expert report and initial rebuttal report of one of Plaintiff's experts, Dr. Mark Zacharewicz, which were produced to Defendant on August 20, 2021 and September 17, 2021, respectively. [Doc. 47 at 5; Doc. 48-2 at 7].

In response, Walgreens maintains that Dr. Fall's supplemental expert reports were timely submitted under Rule 26(e). [Doc. 57 at 6]. First, Walgreens focuses on the language of Rule 26(e)(2), which states that "[a]ny additions or changes to [expert reports] must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2). Defendant asserts that because its supplemental disclosures were made "well in advance" of the Parties' February 1, 2022 deadline[1] to submit pretrial disclosures, its supplemental expert reports were timely under Rule 26(e)(2). [Doc. 57 at 3]. Walgreens notes that with respect to Dr. Fall's

---

[1] Under the Local Rules of Practice for this District, disclosures under Rule 26(a)(3) must be made by the deadline to submit a proposed final pretrial order. *See* D.C.COLO.LCivR 26.1; *see also* [Doc. 25 at 8 (setting a February 1, 2022 deadline for submission of the Parties' proposed final pretrial order)].

December Report, the Thornton Fire Department records were produced to Defendant on September 22, 2021—five days after Dr. Fall's initial report was submitted on September 17, 2021—and argues that the December Report is timely because it was submitted prior to February 1, 2022 deadline for pretrial disclosures.  [*Id.* at 6].  Moreover, Defendant asserts that "the [Thornton Fire Department records] are only summarized in Dr. Fall's supplemental report," and "[n]o opinions regarding them are expressed unless one considers the 'Examiners' Note' at the end of the summary to be an opinion."  [*Id.*].  Similarly, with respect to Dr. Fall's January Report, Walgreens states that this supplement was timely disclosed because the opinions contained therein were based on Dr. Fall's review of Dr. Zacharewicz's deposition, which was not available for review until January 5, 2022, when defense counsel received the deposition transcript from the court reporter.  [*Id.* at 7].

***The December Report***.  The court first addresses the timeliness of Dr. Fall's December Report, which Defendant maintains is timely because it was produced prior to February 1, 2022. *See* [*id.* at 3].  The court respectfully disagrees.  Under the Federal Rules, supplementation of expert reports must be made "in a timely manner," Fed. R. Civ. P. 26(e)(1)(A), and in any event, no later than "the time the party's pretrial disclosures under Rule 26(a)(3) are due."  Fed. R. Civ. P. 26(e)(2).  But the deadline set out in Rule 26(e)(2) "is not the only constraint for courts when determining whether a supplementation is timely," *Fisher v. Mulligan*, No. 19-cv-00154-NDF-MLC, 2020 WL 10357050, at *4 (D. Wyo. Aug. 18, 2020), given the Rule's simultaneous requirement that supplementation be made "in a timely manner."  *See* Fed. R. Civ. P. 26(e)(1)(A); *see also Great N. Ins. Co. v. NGL Warehouse, LLC*, No. 14-cv-03233-PAB-NYW, 2016 WL 11691162, at *3 (D. Colo. Sept. 21, 2016) ("[S]imply because supplemental disclosures are made on or before a deadline does not necessarily mean that they are 'timely' under Rule 26(e).").

"While [Rule 26(e)] does not define 'in a timely manner,' supplementation must occur 'in a fashion that will allow [the opposing party] to conduct meaningful discovery and avoid undue delay in the progress of [the] case.'" *Carroll v. SAFECO Ins. Co. of Am.*, No. 20-cv-00219-REB-NYW, 2020 WL 7664731, at *2 (D. Colo. Dec. 24, 2020) (quoting *United States v. Guidant Corp.*, No. 3:03-0842, 2009 WL 3103836, at *4 (M.D. Tenn. Sept. 24, 2009) (alteration marks in original)). The timeliness of supplementation centers on when the disclosing-party "reasonably should know" that its disclosures are incomplete or incorrect. *See Jama*, 304 F.R.D. at 299-300; *Harvey v. United States*, No. 04-cv-00188-WYD-CBS, 2005 WL 3164236, at *13 (D. Colo. Nov. 28, 2005), *report and recommendation adopted sub nom. Est. of Harvey, ex rel. Grace v. United States*, 2006 WL 2505850 (D. Colo. Aug. 28, 2006). Thus, even where the supplementation is made before the pretrial-disclosure deadline, the court will still consider a party's diligence in obtaining the supplemental information, the length of time between receiving the information and the supplementation, and other relevant facts "to determine whether a party's courts of conduct in supplementing frustrates the purpose of Rule 26 to promote full and orderly pretrial disclosure." *Carroll*, 2020 WL 7664731, at *2.

Walgreens concedes that it came into possession of the Thornton Fire Department records referenced in Dr. Fall's December Report on September 22, 2021. [Doc. 57 at 6]. The court notes that Walgreens received the records five days after the submission of Dr. Fall's initial expert report on September 17, 2021, and thus these records could not have been included in that initial report. However, Walgreens provides no explanation for why it waited nearly four months after receiving the Thornton Fire Department records—and until the January 10, 2022 discovery deadline—to supplement Dr. Fall's initial report to discuss those records. *See generally* [Doc. 57]. While the supplemental disclosure was "made prior to the discovery cut-off and therefore [was] not per se

untimely," Defendant's belated disclosure "'effectively foreclose[d] the opposing party from conducting discovery on the supplemental [report]' and thus is untimely under Rule 26(e)." *First W. Cap. Mgmt. Co. v. Malamed*, No. 16-cv-01961-WJM-MJW, 2017 WL 6628108, at *2 (D. Colo. Oct. 2, 2017) (quoting *Johnson v. Sch. Dist. No. 1 in the Cty. of Denver*, No. 12-cv-02950-MSK-MEH, 2014 WL 983521, at *3 (D. Colo. Mar. 13, 2014)). Indeed, supplementation that occurs on the discovery deadline—several months after the disclosing party learned of its duty to supplement—plainly does not permit the other party to "conduct meaningful discovery" with respect to that belated disclosure, *Carroll*, 2020 WL 7664731, at *2, and such supplementation cannot be deemed to have occurred when the disclosing party reasonably knew that its disclosures were incomplete. *Jama*, 304 F.R.D. at 299. Because Walgreens waited nearly four months after receiving the additional records on September 22, 2021 to supplement Dr. Fall's expert report and provides no explanation for its delay, the court concludes that the December Report, insofar as it discusses the Thornton Fire Department records, is untimely based on the record before it. *See NGL Warehouse*, 2016 WL 11691162, at *5 (concluding that the plaintiffs were not diligent in supplementing an expert report where they provided no explanation as to why they did not supplement the report in the months following the time they received new information); *Harvey*, 2005 WL 3164236, at *13 (plaintiff did not supplement in a timely manner when he waited four months to supplement after receiving information and offered no justification for the delay).

In the alternative, Walgreens suggests that the Thornton Fire Department records "are only summarized in Dr. Fall's supplemental report" and asserts that Dr. Fall does not offer any opinions as to the records "unless one considers the 'Examiners' Note' at the end of the summary to be an opinion." [Doc. 57 at 6]. As a preliminary matter, in the "Examiner's note" referenced by Walgreens, Dr. Fall states that two medical incidents detailed in the Thornton Fire Department

records "were [not] related" to the garage-door incident; this appears to be an opinion offered by Dr. Fall. *See* [Doc. 48-2 at 1]. Regardless, to the extent Defendant's assertion can be construed as an argument that the factual summarization of the Thornton Fire Department records somehow insulates Dr. Fall's discussion of the records from the timeliness requirements of Rule 26(e), Walgreens cites no legal authority in support of this assertion. *See generally* [Doc. 57]. Rule 26(a)(2) requires that an expert report contain not only a "*complete statement* of all the opinions the witness will express and the basis *and reasons for them*," but also "the *facts or data considered* by the witness in forming [those opinions]." Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii) (emphases added). In other words, Rule 26(a)(2) requires an expert's initial report to contain all of the information upon which an expert has based his or her opinions, and Rule 26(e)(2) requires supplementation if that initial report is incorrect or incomplete, including supplementation of the facts and data supporting, forming the basis or, or providing additional context to an expert's opinion. *Cf. NGL Warehouse*, 2016 WL 11691162, at *5 (D. Colo. Sept. 21, 2016) (finding supplementation that consisted of "a single sentence and a subsequent general reference to Mr. Reed's deposition" was untimely under Rule 26). Accordingly, because the supplemental discussion of the Thornton Fire Department records contained in the December Report was untimely, the court concludes that this portion of Defendant's belated supplementation constitutes a violation of Rule 26.

***The January Report***. Next, Plaintiff challenges two paragraphs of Dr. Fall's January Report, the first of which Plaintiff asserts improperly discuss Dr. Zacharewicz's initial affirmative expert report, disclosed to Defendant on August 20, 2021, and the second of which Dr. Zacharewicz's initial rebuttal report, disclosed to Defendant on September 17, 2021. [Doc. 47 at 4, 5]; *see also* [Doc. 48-2 at 7]. Plaintiff argues that because Dr. Zacharewicz's affirmative report was available to Defendant before Defendant produced Dr. Fall's rebuttal expert report, the portion

of Dr. Fall's January Report discussing Dr. Zacharewicz's expert report is untimely.  [Doc. 47 at 4].  And while Plaintiff acknowledges that Dr. Zacharewicz's rebuttal report was disclosed to Defendant on or after Dr. Fall's rebuttal expert report (and thus could not have been discussed in Dr. Fall's rebuttal expert report), he asserts that "there is simply no excuse for Walgreens to wait over three months, and after Dr. Fall had been deposed, to disclose a supplemental report discussing these records."  [*Id.* at 5].

Defendant nevertheless maintains that Dr. Fall's January Report is timely because "the opinions in [the January Report] were based on [Dr. Fall's] review of" Dr. Zacharewicz's deposition testimony, the transcript of which only became available to Defendant on January 5, 2022.  [Doc. 57 at 7].  Specifically, while Walgreens concedes that the January Report mentions Dr. Zacharewicz's earlier reports, Walgreens argues that "[i]t is clear from [the January Report] that [Dr. Zacharewicz's] earlier reports were reviewed in connection with [Dr. Fall's] evaluation of [Dr. Zacharewicz's] deposition testimony, which was not available until the day before [Dr. Fall's] report was written" and that Dr. Fall's "mention of [Dr. Zacharewicz's earlier reports] was solely related to her receipt of the transcript."  [*Id.* at 7-8].  In his Reply, Plaintiff highlights the fact that Dr. Fall's initial expert report failed to mention Dr. Zacharewicz's expert report and argues that it was improper for Dr. Fall to wait until Defendant received Dr. Zacharewicz's deposition testimony to discuss his initial reports.  [Doc. 60 at 4].

The court generally agrees with Plaintiff.  As explained above, supplementation under Rule 26(e) is limited to correcting inaccuracies or incompleteness based on information that was *not available* at the time of the expert's initial disclosure.  *Seidman*, 2016 WL 9735768, at *4; *see also S.E.C. v. Nacchio*, No. 05-cv-00480-MSK-CBS, 2008 WL 4587240, at *3 (D. Colo. Oct. 15, 2008) ("A plain reading of Fed. R. Civ. P. 26(e)(1) suggests that a supplemental expert report should be

based upon additional or corrective information that was not available at the time of the expert's original report.").   In other words, an expert cannot decline to discuss information he or she (or the party for whom the expert is providing a report) possessed at the time the expert drafted an initial report and then later decide to discuss that information under the guise of supplementation or providing additional context to newly obtained information.

Dr. Fall's first rebuttal expert report does not substantively discuss Dr. Zacharewicz's affirmative expert report or offer any counter-opinions to that report, *see* [Doc. 48-3], despite the fact that Walgreens had Dr. Zacharewicz's affirmative expert report in its possession at the time Dr. Fall submitted her rebuttal report.  *See* [*id.* at 1 (Dr. Fall's initial report dated September 8, 2021)].[2]  And Defendant received Dr. Zacharewicz's rebuttal report on September 17, 2021, yet waited four months to supplement Dr. Fall's report to address that disclosure, *see* [Doc. 48-2], a delay for which Defendant provides no explanation.  [Doc. 57].

The court notes that the second challenged paragraph discusses Dr. Zacharewicz's September 17, 2021 rebuttal report without any reference or connection to Dr. Zacharewicz's subsequent deposition testimony.  *See* [Doc. 48-2 at 7].  Accordingly, the court is not persuaded by Defendant's argument that Dr. Fall's discussion of that report is "solely related to her receipt of the transcript of Dr. Zacharewicz's deposition," [Doc. 57 at 8], and instead concludes that Dr. Fall's discussion of Dr. Zacharewicz's rebuttal report is an improper attempt to bolster her previously disclosed opinions.  *See* [Doc. 48-2 at 6 (Dr. Fall stating that she "ha[s] now been provided with additional record**s** *including* a deposition of Dr. Mark Zacharewicz") (emphasis

---

[2] At most, Dr. Fall's rebuttal report cursorily mentions Dr. Zacharewicz's report in the context of another physician's review of the report.  *See* [Doc. 48-3 at 13 ("[Dr. Reinhard] reviewed the report from Dr. Zacharewicz who noted that physical and emotional symptoms were compounding his cognitive performance, and he recommended holding off on formal neuropsychological testing because of problems with pain, vestibular and visual dysfunction, and mood disorder.")].

added); *id.* at 7 (Dr. Fall stating that "[r]eview of the additional documentation does not change my opinions as previously given")]; *Vulcan Materials Co. v. Atofina Chemicals Inc.*, No. 02-1251-JTM, 2004 WL 5628830, at *2 (D. Kan. Feb. 13, 2004) ("Clearly [the expert] could have addressed [the materials] in his initial report but failed to do so.  Under the circumstances, the court is not persuaded that [the supplemental] report should be characterized as a Rule 26(e) supplementation; thus, his report is untimely.") (footnote omitted); *NGL Warehouse*, 2016 WL 11691162, at *5. Accordingly, the second challenged paragraph is untimely supplementation under Rule 26(e).

However, the court reaches the opposite conclusion with respect to the first challenged paragraph.  *See* [Doc. 48-2 at 7].  In that paragraph, Dr. Fall references Dr. Zacharewicz's initial expert report in the context of concluding that Dr. Zacharewicz's "critique in his deposition that Dr. Boyd did not perform this type of testing does not mean that Dr. Boyd had not considered it." [*Id.*].  In other words, this paragraph provides Dr. Fall's commentary on a statement made during Dr. Zacharewicz's deposition.  While Dr. Zacharewicz's initial report was available to Defendant on August 20, 2021, Dr. Zacharewicz's deposition testimony—which gives rise to the challenged paragraph—was not available until January 5, 2022.  [Doc. 57-1].  While the court acknowledges that "Dr. Fall had not even mentioned Dr. Zacharewicz's expert report in her September 17, 2021 report," *see* [Doc. 60 at 4], Plaintiff does not articulate a basis for or cite legal authority establishing that the brief discussion of the previously disclosed report, which is not used to bolster Dr. Fall's original opinions but is instead used to provide context to a *new* assertion made in response to Dr. Zacharewicz's December deposition statement, runs afoul of the Federal Rules.  *See* [Doc. 60 at 4]; *compare Sibley v. Sprint Nextel Corp.*, No. 08-2063-KHV, 2013 WL 1819773, at *3 (D. Kan. Apr. 30, 2013) ("A supplemental expert report that states additional opinions or rationales or seeks to 'strengthen' or 'deepen' opinions expressed in the original expert report exceeds the bounds of

permissible supplementation and is subject to exclusion under Rule 37(c)").  Accordingly, the court cannot conclude that the brief reference to Dr. Zacharewicz's initial report to in the first paragraph renders that portion of the January Report untimely under Rule 26.

### B.      Dr. Morgenstern's Supplemental Report

Next, Plaintiff challenges a supplemental report of Dr. Morgenstern as untimely under Rule 26.  *See* [Doc. 47 at 5].  Defendant disclosed Dr. Morgenstern's supplemental report, which is dated December 16, 2021, on January 10, 2022.  [*Id.*]; *see also* [Doc. 48-1 at 2].  Plaintiff asserts that in this report, Dr. Morgenstern "goes into detail about testing performed by Dr. Dilaawar Mistry (one of Mr. Cereceres' treating providers)."  [Doc. 47 at 5].  However, according to Plaintiff, Dr. Mistry's test records were disclosed to Defendant on August 20, 2021.  [*Id.*].  Plaintiff asserts that Dr. Morgenstern's detailed discussion of these records, which were available to Defendant months prior to the January 10, 2022 disclosure of the report, renders the supplementation untimely under Rule 26.  [*Id.* at 5-6].

In addition, while Plaintiff does not expressly mention Dr. Karen McAvoy in his Motion, *see* [*id.* at 5-6], he challenges Dr. Morgenstern's belated discussion of "test records – from the Aasha Brain Clinic – [which] were disclosed with Plaintiff's Tenth Supplemental Disclosures on August 20, 2021," which "Dr. Morgenstern very briefly mentioned . . . in his first supplemental/rebuttal report disclosed on September 17, 2021.  [*Id.* at 5].  In so doing, Plaintiff cites Dr. Morgenstern's rebuttal report, highlighting the Aasha Brain Clinic records from Dr. McAvoy's examination of Plaintiff.  *See* [Doc. 47-8 at 2].  Although Plaintiff is represented by counsel and is not entitled to a liberal construction of his pleadings, *Chavez-Torres v. City of Greeley*, 660 F. App'x 627, 630 (10th Cir. 2016), the court construes Plaintiff's Motion as

challenging Dr. Morgenstern's supplemental discussion of Dr. Mistry's and Dr. McAvoy's test records.[3]

Walgreens disagrees. It argues that because the test records were disclosed on August 20, 2021—the same day Dr. Morgenstern provided his affirmative expert report—Dr. Morgenstern could not have discussed these records in that report. [Doc. 57 at 8]. In addition, Walgreens asserts that Dr. Morgenstern's report is based on Dr. Morgenstern's review of Plaintiff's disclosure of Drs. Mistry and McAvoy as expert witnesses in this case, which disclosures were made on December 6, 2021. [*Id.* at 8-9].

As a preliminary matter, because the duty to supplement arises when a party reasonably should know that its expert disclosures are incomplete, *Jama*, 304 F.R.D. at 299-300, Defendant's argument concerning the availability of the test records at the time of Dr. Morgenstern's initial report is not determinative of whether the supplement was made in a timely manner. Moreover, despite Defendant's assertion that Dr. Morgenstern's discussion of the test records is based on Plaintiff's disclosure of Drs. Mistry and McAvoy as an expert witnesses, this is not expressly reflected in Dr. Morgenstern's supplemental report, which primarily includes a summary of the test records—records which were available to Defendant months prior to Dr. Morgenstern's

---

[3] Plaintiff has highlighted the portions of Dr. Morgenstern's supplemental report that he believes are untimely under Rule 26(e). *See* [Doc. 48-9]. In so doing, he has highlighted Dr. Morgenstern's discussion of an evaluation of Plaintiff by Regina Chonka, O.D., of Neuro Sight Vision Care, as well as Dr. Morgenstern's discussion of an examination performed by Dr. William Boyd, Plaintiff's treating physician. *See* [*id.* at 2]. However, Plaintiff only raises arguments in his Motion to Strike with respect to test records related testing performed by Drs. Mistry and McAvoy—not Drs. Boyd or Chonka. *See* [Doc. 47 at 5-6; Doc. 48-10 at 10]. And while Plaintiff shifts his focus to Dr. Boyd in his Reply, *see* [Doc. 60 at 5], arguments raised for the first time in a reply brief are deemed waived. *White v. Chafin*, 862 F.3d 1065, 1067 (10th Cir. 2017). Because Plaintiff offers no argument in his Motion concerning Drs. Chonka or Boyd and any related testing records, nor does he clearly explain when those records were disclosed to Defendant, he has not met his burden of establishing a Rule 26 violation with respect to these portions of the report. *Curtis*, 2021 WL 5498301, at *7. Accordingly, the address Dr. Morgenstern's supplemental report only to the extent Plaintiff challenges his discussion of Drs. Mistry's or McAvoy's test records.

supplemental report. *See* [Doc. 48-9 at 1; Doc. 48-10 at 10]; *see also* [Doc. 48-7 at 2 (Dr. Morgenstern discussing the medical records in his first supplemental report dated August 31, 2021)]. And even insofar as Dr. Morgenstern now appears to critique the testing performed by or the records of Drs. Mistry and McAvoy in his supplemental report, *see* [Doc. 48-9 at 2], these test records were nevertheless available to Dr. Morgenstern months prior to his supplementation.

Defendant does not articulate why, prior to the disclosure of Drs. Mistry and McAvoy as expert witnesses, he could not have offered this discussion of the subject records. *See* [Doc. 57 at 8-9]. Indeed, Plaintiff's Third Supplemental Expert Disclosures demonstrate that Drs. Mistry and McAvoy are expected to testify about their August 3, 2021 examinations of Plaintiff "in accordance with the information contained within the medical records from the Aasha Brain Clinic." [Doc. 58 at 4, 5, 6]. Accordingly, insofar as Dr. Morgenstern references or discusses test records from testing performed by Drs. Mistry or McAvoy, his supplemental report is untimely under Rule 26.

### C.     Ms. Bartmann's Supplemental Report

Finally, Plaintiff challenges the supplemental report of Defendant's vocational expert, Cynthia Bartmann, moving to strike the report in its entirety on the basis that it is untimely. [Doc. 47 at 6]. Specifically, while Ms. Bartmann's supplemental report purports to be based on new information, *see* [Doc. 48-13 at 1], Plaintiff asserts that the information is not new, but had instead "been in Walgreens' possession for months." [Doc. 47 at 7]. Although Plaintiff appears to assert that the *entirety* of Ms. Bartmann's supplemental report is improper, he takes issue with Ms. Bartmann's discussion of only a few documents in particular: (1) Dr. Morgenstern's two expert reports, disclosed by Defendant to Plaintiff on August 20, 2021 and September 17, 2021; (2) Dr. Zacharewicz's September 17, 2021 rebuttal report; (3) records from the Aasha Brain Clinic that

were disclosed to Defendant on August 20, 2021; and (4) work-restriction opinions from Dr. David Reinhard, Plaintiff's rebuttal expert, which were provided to Defendant in a supplemental report dated December 7, 2021. [*Id.* at 7-8]. Plaintiff maintains that these documents "should have been provided to Ms. Bartmann and she should have supplemented her opinions well before the discovery cutoff deadline and before she was deposed." [*Id.*].[4]

In response, Defendant asserts that in Ms. Bartmann's supplemental report, she reviewed a number of new documents, including "a multitude of records and information disclosed after the deadline for her initial rebuttal report, which was September 17, 2021, as well as the transcripts of depositions that took place long after that date." [Doc. 57 at 10].[5] According to Defendant, Ms. Bartmann's supplemental report was timely because it relies on information disclosed after her initial report was made. [*Id.*].

Insofar as Plaintiff challenges Ms. Bartmann's reliance on Dr. Morgenstern's and Dr. Zacharewicz's reports, as well as the Aasha Brain Clinic Records, the court respectfully disagrees with Defendant. Defendant does not dispute that these records were in its possession as of

---

[4] In addition, Plaintiff argues that Ms. Bartmann's supplemental report is "a blatant attempt to backfill specious opinions from her first report." *See* [Doc. 47 at 8]. Plaintiff's argument, however, is based on what Plaintiff believes to be deficiencies in Ms. Bartmann's methodology. *See, e.g.*, [*id.* at 8-10]. Plaintiff has already raised these arguments in a motion under Rule 702 of the Federal Rules of Evidence, which is currently pending before the presiding judge. *See* [Doc. 52 at 7]. Indeed, in his Reply, Plaintiff states that Ms. Bartmann is now attempting to "correct and bolster many of the problems with her first report that became apparent during her deposition[] and which form the basis for Mr. Cereceres' Rule 702 motion to strike Ms. Bartmann's opinions." [Doc. 60 at 6 (emphasis added)]. The court declines to wade into the sufficiency of Ms. Bartmann's opinions under Rule 702, which is a determination solely within the province of the presiding judge. Accordingly, the court does not address this argument.

[5] Specifically, Defendant references Plaintiff's Third and Fourth Supplemental Expert Disclosures, which were served on December 6, 2021 and December 15, 2021, respectively, as well as Plaintiff's Thirteenth Supplemental Disclosures, which were served on November 19, 2021. [Doc. 57 at 10]. Because Mr. Cereceres does not expressly challenge Ms. Bartmann's supplemental report insofar as it relies on these documents, *see* [Doc. 47 at 7-8], the court does not address them.

September 17, 2021, and Defendant provides no explanation as to why it waited months between receiving these records and supplementing Ms. Bartmann's report. *See generally* [Doc. 57]. For this reason, the court cannot conclude that Defendant supplemented Ms. Bartmann's report when it reasonably knew that Ms. Bartmann's report was incomplete, and thus, these portions of the supplemental report are untimely under Rule 26(e). *NGL Warehouse*, 2016 WL 11691162, at *5.

However, the court agrees with Defendant that Ms. Bartmann's discussion of Dr. Reinhard's work-restriction opinions is not untimely supplementation because the information discussed is new. Plaintiff asserts that Dr. Reinhard's work-restriction opinions are not new because they are simply a reiteration of a vocational expert's work-restriction findings, which were disclosed to Defendant on August 20, 2021. *See* [Doc. 47 at 8]. But as Plaintiff acknowledges, *see* [*id.*], Ms. Bartmann stated at her deposition that she had not incorporated the vocational expert's findings into her analysis or opinions because based on her training, she only relies on work-restriction opinions that are provided by a physician. *See* [Doc. 48-12 at 83:10-25]. It was not until December 7, 2021 that Dr. Reinhard drafted a supplemental report stating that he agreed with the vocational expert's findings. [Doc. 48-17 at 9]. In other words, based on the record before the court, it was not until December 2021[6] that Plaintiff served Defendant with work-restriction opinions upon which Ms. Bartmann could rely. *See* [Doc. 48-17 at 6]. This triggered Defendant's duty to supplement Ms. Bartmann's report under Rule 26(e)(2), and Defendant did so one month later; in her supplemental report, Ms. Bartmann expressly relies on Dr. Reinhard's provided work restrictions and states that she does not agree with them. *See* [Doc. 48-13 at 5-6].

---

[6] It is not clear from the record the date on which this supplemental report was disclosed to Defendant, but the court notes that Plaintiff served his Fourth Supplemental Expert Disclosures on December 14, 2021. *See* [Doc. 58-2 at 6].

The court acknowledges that the Defendant's disclosure of Ms. Bartmann's supplemental report on the day of the discovery deadline essentially precluded Plaintiff from engaging in further discovery with respect to that opinion.  But Plaintiff cites no legal authority and makes no substantive argument supporting his assertion that Dr. Reinhard's opinions are not simply new because they incorporate or reiterate a vocational expert's previously stated opinions, despite the fact that Ms. Bartmann had expressly represented that she did not, and could not, rely on the vocational expert's opinions in forming her opinions.  *See* [Doc. 47 at 8].  And because Plaintiff offers no argument explaining why the supplementation of Ms. Bartmann's expert report one month after receiving the new information does not demonstrate diligence, the court cannot conclude that Defendant failed to act diligently when it supplemented Ms. Bartmann's report one month after it received this new information.  *Carroll*, 2020 WL 7664731, at *2.  Accordingly, the court is respectfully not persuaded by Plaintiff's argument with respect to Dr. Reinhard's work-restriction opinions and does not find that the supplementation of Ms. Bartmann's report with respect to those opinions is untimely under Rule 26(e)(2).[7]

## II.    Whether Sanctions Are Appropriate

Having concluded that some portions of Defendant's supplemental expert reports violate Rule 26, the court must determine the appropriate sanction for these violations, if any.  As set forth above, Rule 37(d) dictates that when a party fails to provide information required by Rule 26(a) or (e), the party is generally "not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless."  Fed.

---

[7] The court does not address Defendant's suggestion in its Response that Dr. Reinhard's December 7, 2021 supplemental report should be stricken as untimely, as such a request is not properly before the court.  *See* D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion.  A motion shall be filed as a separate document.").

R. Civ. P. 37(c)(1).  Defendant bears the burden of establishing that its Rule 26 violations were substantially justified or harmless.  *Sender v. Mann*, 225 F.R.D. 645, 655 (D. Colo. 2004).  The court considers the *Woodworker's* factors below.

    ***Prejudice or Surprise to Plaintiff***.  Plaintiff asserts that the supplemental expert reports came as a surprise to him because prior to the disclosure of the supplemental reports, Defendant's experts had already been deposed and had testified that they had not drafted any new reports.  [Doc. 47 at 11].  He argues that he has been prejudiced by the late disclosures because he has "lost the opportunity to depose these experts about their new opinions."  [*Id.*].  Defendant responds that Plaintiff cannot claim prejudice based on Defendant's untimely disclosures because the disclosures were merely updated opinions served before the discovery cutoff deadline.  [Doc. 57 at 12].

    The court has already concluded that Defendant's supplemental disclosures which rise to the level of Rule 26 violations are not mere "updated opinions," but are rather belated attempts to discuss information previously known to Defendant.  Moreover, the court is not persuaded that much weight should be given to the fact that the untimely supplemental expert disclosures were submitted prior to the discovery deadline, given the fact that they were submitted just hours prior to that deadline.  The fact that Walgreens has attempted to bolster the opinions of its experts with additional opinions or additional supporting facts or data is likely to prejudice Plaintiff, given that Plaintiff has been deprived of the opportunity to address those new opinions or discussions by having his own experts rebut those opinions or discussions.  *Cf. Chung v. El Paso Sch. Dist. #11*, No. 14-cv-01520-KLM, 2015 WL 1882939, at *2 (D. Colo. Apr. 22, 2015) (where the plaintiff received an expert's affidavit after the discovery date, which revealed the substance of the expert's testimony, finding that the plaintiff was likely to be prejudiced by the late disclosure).

Accordingly, the court agrees with Plaintiff that the Rule 26(e) violations run the risk of prejudicing Plaintiff.

*Ability to Cure and Potential for Trial Disruption*.  Plaintiff maintains that "the only viable option to cure the prejudice is to strike these [challenged] opinions" because allowing Plaintiff to depose Defendant's experts again or supplement his own reports "will only add to litigation costs and delay the case further."  [Doc. 47 at 12].  Defendant, meanwhile, argues that Plaintiff has "ample time to prepare to cross-examine Defendant's experts about their opinions," and further asserts that "[a]ny inability for Plaintiff's experts to rebut the supplemental opinions was caused by Plaintiff's own late disclosures and failure to present his key expert witness for deposition until December 22, 2021."  [Doc. 57 at 12].  The court is respectfully not persuaded by either Party's argument.  First, the fact that Plaintiff has ample time to prepare to cross-examine Defendant's experts at trial does not alleviate any prejudice arising out of Plaintiff's inability to rebut any of the untimely supplemental disclosures with his own expert opinions.  Moreover, the court cannot conclude that the above-identified prejudice can be attributed to *Plaintiff*, where Defendant violated Rule 26 by failing to timely supplement its expert reports before eventually supplementing those reports on the discovery deadline.

But the court is similarly not persuaded by Plaintiff's assertion that striking the untimely disclosures is the only mechanism through which the prejudice can be cured, and the court agrees with Defendant that sanctions short of partially striking the supplemental expert reports—such as permitting Plaintiff to serve additional supplemental expert opinions that specifically address Defendant's untimely disclosures—would cure the prejudice identified above.  Trial is set for January 2023, which gives Plaintiff sufficient time to produce supplemental expert reports addressing Defendant's untimely expert disclosures.  *Cf. Chung*, 2015 WL 1882939, at *2

(concluding that where the trial was four months away, the plaintiff had time for plaintiff to take a supplemental deposition of a belatedly disclosed expert "well before" trial).  And for this same reason, the court cannot conclude that trial would be disrupted by permitting Plaintiff to serve any supplemental expert disclosures it so chooses.  Indeed, Plaintiff's only argument concerning the trial is that introducing "unrebutted [expert] testimony" would "significantly disrupt the trial" because Walgreens is attempting to shift their theories of damages and causation. *See* [Doc. 47 at 12].  But by permitting Plaintiff to supplement his expert disclosures eight months prior to trial to address Defendant's Rule 26 violations, there is no substantial risk of trial disruption.  *See Hauge v. Murphy*, No. 09-cv-143-J, 2010 WL 11596871, at *4 (D. Wyo. June 23, 2010) ("The trial in this matter has been moved to November 2010, almost six months away.  Therefore, another amended disclosure from plaintiff's expert witness, out of time, will not disrupt the trial."); *cf. Vanderlaan v. Ameriprise Auto & Home Ins.*, No. 20-cv-00191-PAB-STV, 2021 WL 4441518, at *8 (D. Colo. Sept. 28, 2021) ("Any prejudice that could result from plaintiff's insufficient disclosure can be cured without any disruption to the trial, which is not set until [eight months out], by allowing plaintiff to supplement her disclosures.").  Moreover, simply permitting Plaintiff to disclose additional rebuttal expert reports out-of-time is more productive than striking discrete, narrow portions of Defendants' supplemental reports, which runs the risk of causing confusion to the experts, the Parties, and the court with respect to what can and cannot be used or discussed at trial.

     ***Bad Faith or Willfulness***.  Finally, while Plaintiff does not argue that Defendant has operated in bad faith, he maintains that Defendant has been willful in delaying its supplemental expert reports because the documents triggering the supplementation have been in Defendant's possession for months.  [Doc. 47 at 12-13].  For its part, Defendant assigns any delay in its supplementation to Plaintiff, asserting that "Plaintiff continued to make disclosures and offer

expert witness depositions into late December."  [Doc. 57 at 14].  The court is unpersuaded by Defendant's argument, given the court's above conclusions with respect to Defendant's diligence.

While the court concludes that Defendant has not met its burden of demonstrating that its Rule 26 violations were substantially justified or harmless, the court has "considerable discretion to determine an appropriate sanction under Rule 37 and the particular circumstances of a given case," *Cartel*, 2010 WL 502721, at *17, and may impose sanctions other than the exclusion of evidence at trial.  Fed. R. Civ. P. 37(c)(1)(C).  Upon consideration of the *Woodworker's* factors and the circumstances of this case, the court does not find that the "drastic sanction" of excluding evidence is warranted here.  *See Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997); *see also Ellsworth v. Tuttle*, 148 F. App'x 653, 663 (10th Cir. 2005)  ("Where a party seeks to have evidence excluded on the basis of alleged discovery misconduct, 'the challenged behavior must *substantially* have interfered with the aggrieved party's ability fully and fairly to prepare for and proceed at trial.'") (quoting *Woodworker's Supply*, 170 F.3d at 993) (emphasis in original).  Because the court finds that any potential prejudice to Plaintiff may be cured by permitting Plaintiff to address the untimely disclosures, the court cannot conclude that such substantial interference is present here.  Accordingly, the court finds it appropriate to permit Plaintiff to supplement his own expert reports to respond to the specific Rule 26 violations identified in this Order.[8]

Accordingly, the Motion to Strike is **DENIED** insofar as it seeks to strike portions of Dr. Fall's  supplemental  expert  reports,  portions  of  Dr.  Morgenstern's  expert  reports,  or  Ms.

---

[8] Plaintiff states in his Motion that if the court "were inclined to re-open discovery for [his] experts and allow Plaintiff to re-depose them, Plaintiff would request that it be done solely at Walgreens' cost."  [Doc. 47 at 12].  The court does not find that permitting additional depositions would be a productive or efficient result, given the relatively narrow portions of Defendants' supplemental disclosures that violate Rule 26.  And because Defendant did not act in bad faith and the Rule 26 violations identified in this Order are not egregious, the court declines to order that Defendant bear the costs associated with Plaintiff serving additional expert reports to address Defendant's Rule 26 violations.

Bartmann's supplemental expert report in its entirety.  However, it is hereby **ORDERED** that Plaintiff is granted leave to supplement his experts' reports to respond to <u>the specific Rule 26 violations identified in this Order</u>: (1) Dr. Fall's discussion of the Thornton Fire Department records in her December Report, [Doc. 48-2 at 1]; (2) Dr. Fall's discussion of Dr. Zacharewicz's *rebuttal* expert report in her January Report, [*id.* at 7]; (3) Dr. Morgenstern's discussion of the test records related to Drs. Mistry's and McAvoy's testing performed on Plaintiff, [Doc. 48-9 at 1-2]; (4) Ms. Bartmann's discussion of Dr. Morgenstern's and Dr. Zacharewicz's reports, *see* [Doc. 48-13 at 2-3]; and (5) Ms. Bartmann's discussion of Aasha Brain Clinic records, [*id.* at 3].  <u>Such leave is not extended to any portion of the supplemental reports which the court has not concluded constitutes a violation of Rule 26</u>, including Dr. Fall's discussion of Dr. Zacharewicz's affirmative expert report, [Doc. 48-2 at 7], Dr. Morgenstern's discussion of or commentary on Dr. Chonka's or Dr. Boyd's examinations or evaluations of Plaintiff, [Doc. 48-9 at 2], or Ms. Bartmann's discussion of Dr. Reinhard's work-restriction opinions.   [Doc. 48-13 at 3-4, 5-6].  Such supplemental disclosures shall be made or before **July 1, 2022**.  To the extent that further depositions are required for any of the experts <u>limited to any supplementation</u>, the Parties shall meet and confer, and if they are unable to resolve the issue, the Parties shall contact the chambers of Magistrate Judge Nina Y. Wang before **July 9, 2022** to set a Telephonic Discovery Conference. All other discovery **REMAINS CLOSED**.

**CONCLUSION**

For the foregoing reasons, it is **ORDERED** that:

(1)    The Motion to Strike Portions of Defendant's Fifth Supplemental Expert Disclosures [Doc. 47] is **DENIED**;

(2)     Plaintiff is **GRANTED LEAVE** to supplement his expert reports on or before **July 1, 2022** to address the Rule 26 violations identified in this Order;

(3)     To the extent that further depositions are required for any of the experts <u>limited to any supplementation</u>, the Parties shall meet and confer, and if they are unable to resolve the issue, the Parties shall contact the chambers of Magistrate Judge Nina Y. Wang before **July 9, 2022** to set a Telephonic Discovery Conference; and

(4)     All other discovery **REMAINS CLOSED**.

DATED:  June 9, 2022                    BY THE COURT:

                                                           _____
                                                           Nina Y. Wang
                                                           United States Magistrate Judge