IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 20-cv-03406-NYW-MEH

DENNIS CERECERES,

      Plaintiff,

v.

WALGREEN CO., d/b/a WALGREENS 10308 S PPT,

      Defendant.

---

## ORDER

---

Pending before the Court is Plaintiff Dennis Cereceres' ("Plaintiff" or "Mr. Cereceres") "Motion to Exclude the Opinions of Cynthia Bartmann Pursuant to Fed. R. Evid. 702" ("Motion"). [Doc. 52, filed January 17, 2022]. Defendant Walgreen Co., d/b/a Walgreens 10308 S PPT ("Defendant" or "Walgreens") filed a response in opposition ("Response"), [Doc. 59, filed February 7, 2022], and Plaintiff subsequently filed a reply brief ("Reply"), [Doc. 61, filed February 8, 2022]. Upon consideration of the briefing, the Court concludes that oral argument will not materially assist in the resolution of the Motion. For the reasons set forth below, the Court respectfully **DENIES** the Motion.

## BACKGROUND

This action arises out of an incident at a Walgreens store located in Loveland, Colorado on June 14, 2019, wherein Plaintiff alleges that he was struck in the head by an overhead roll-up door. *See* [Doc. 5 at ¶¶ 1, 9].[1] Plaintiff raises two claims under Colorado law: (1) statutory premises

---

[1] Facts drawn from the Complaint are not taken as true for the purposes of resolving this Motion, and are provided solely as background. *See* [Doc. 5].

liability, and (2) negligence.  [*Id.* at ¶¶ 29–64].  In order to support their respective positions, the Parties retained experts to provide their opinions on the employability and future loss in earnings suffered by Plaintiff as a result of his injuries.  [Doc. 52 at 2].  Plaintiff employed Mr. Phillip Sidlow ("Mr. Sidlow") to provide a report on the "loss of earning capacity suffered by" Plaintiff, *see generally* [Doc. 53-1], while Defendant hired Ms. Cynthia Bartmann ("Ms. Bartmann") to do the same, *see generally* [Doc. 53-2].  Both experts interviewed Plaintiff before preparing their reports and forming their opinions and reviewed a set of medical records and opinions.  *See* [Doc. 53-1 at 3–4; Doc. 53-2 at 1].

Mr. Sidlow's report concludes that Plaintiff "is unable to perform any type of substantial, gainful work activity."  [Doc. 53-1 at 5].  As such, "he is 100% occupationally disabled as the result of [his] injury."  [*Id.*].  Taking this loss into account, along with Plaintiff's worklife expectancy, Mr. Sidlow concluded that Plaintiff had suffered a loss of earning capacity totaling $2,407,211.  [*Id.* at 6].  In his report, Mr. Sidlow details the five-step process used to reach the lifetime loss of earning capacity: (1) a definition of pre-injury earning capacity, (2) pre-injury worklife expectancy, (3) post-injury earning capacity, (4) post-injury worklife expectancy, and (5) a present value calculation.  [*Id.* at 34].

Ms. Bartmann's Initial Report is dated September 15, 2021 and employs a different methodology and reaches a different conclusion than that of Mr. Sidlow.  [Doc. 53-2].  She reviewed the medical evidence, considered Plaintiff's employability in light of limitations stemming from his injury, and listed a number of possible areas of employment (as well as specific jobs) that she believed Plaintiff would be able to perform.  *See* [*id.* at 14–16].  She "firmly believe[s] that [Plaintiff] is able to return to work in customer service and sales and should have no future wage loss," and that "his past wage loss is limited to the time off from work during his

medical treatment." [*Id.* at 17]. She also attacks Mr. Sidlow's report, arguing that he failed to identify which work restrictions he employed in calculating Plaintiff's lost earnings or explain why Plaintiff was unable to work within the bounds of certain restrictions. [*Id.* at 16]. Ms. Bartmann also prepared a Supplemental Report, [Doc. 53-4], which was disclosed to Plaintiff "[a]t 3:57 p.m. on the day of discovery cutoff," [Doc. 52 at 3 n.1]. In the Supplemental Report, Ms. Bartmann opines, *inter alia*, that "overwhelming medical evidence does not support permanent work restrictions," and that Plaintiff is capable of working in customer service and sales. [Doc. 53-4 at 6].

Both Ms. Bartmann's Initial and Supplemental Reports rely on evidence supplied by medical professionals. *See generally* [Doc. 53-2; Doc. 53-4]. Of particular note are Drs. Allison Fall ("Dr. Fall") and David Reinhard ("Dr. Reinhard"). Dr. Fall acts as Defendant's medical expert, and opines that Plaintiff is capable of returning to work as a driver and should have no work restrictions. *See* [Doc. 52 at 5]. Dr. Reinhard is Plaintiff's medical expert, and has recommended a set of work restrictions that would preclude Plaintiff's return to work as a driver. [*Id.*; Doc. 53-2 at 14]. Ms. Bartmann also references Ms. Sherry Young, an occupational therapist who conducted a functional capacity evaluation of Plaintiff. [Doc. 53-2 at 9]. Finally, she references the notes, opinions, and recommendations of a number of other physicians: Drs. Pramod Vangeti, Darla Draper, Paula Pook, Don Aspegren, Hua Chen, John Aschberger, Eric Hammerberg, William Boyd, Christopher Geddes, John Sacha, Karen Hill, Elizabeth Ter Haar, Amy Rinner, Naul Paz, Mark Zacharewicz, Karen McAvoy, Dilaawar Mistry, and Bruce Morgenstern. [*Id.* at 2–8; Doc. 53-4 at 2].

Plaintiff filed the instant Motion on January 17, 2022, identifying three opinions from Ms. Bartmann's initial report subject to exclusion: (1) her entire "Employability and Potential Earnings

Analysis," (2) her opinion that Plaintiff "can use these skills in other customer service/sales position[s]," and (3) her belief that Plaintiff "is able to return to work in customer service and sales and should have no future wage loss" and that his "past wage loss is limited to time off from work during his medical treatment." [Doc. 52 at 3]. He also seeks to exclude three opinions contained in Ms. Bartmann's Supplemental Report pursuant to Rule 702: (1) her opinion that "the overwhelming medical evidence does not support permanent work restrictions," along with the entire "Work Restrictions" section of the Supplemental Report, (2) the "Employability" section of the Supplemental Report, and (3) her belief "that Mr. Cereceres is able to work in customer service and sales."[2] [*Id.*]. Plaintiff attacks the reliability of Ms. Bartmann's methodology and her qualifications, as well as the sufficiency of her data. [*Id.* at 2]. Defendant disagrees with Plaintiff, and claims that Ms. Bartmann is qualified and that her methodology and opinions are reliable. [Doc. 59 at 2]. With these facts in mind, the Court turns to a review of the legal standards that will govern the Court's resolution of the Motion.

## LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence states that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise," provided that (a) "the expert's scientific, technical, or other specialized knowledge

---

[2] On January 13, 2022, Plaintiff moved, *inter alia*, to strike the entirety of Ms. Bartmann's Supplemental Report. [Doc. 47]. The Court, then serving as a United States Magistrate Judge drawn to this case for resolution of certain non-dispositive matters, declined to strike the supplemental report but granted Plaintiff leave until July 1, 2022 to supplement his own experts' reports to respond to specific portions of Ms. Bartmann's supplemental report. [Doc. 73, entered June 9, 2022]. At the time, the Court expressed no opinion as to the sufficiency of "Ms. Bartmann's opinions under Rule 702," as that determination rested "solely within the province of the presiding judge." [*Id.* at 17 n.4]. On August 4, 2022, upon the Court's appointment as a United States District Judge, this case was reassigned and the Court assumed responsibility over this matter as the presiding judge. [Doc. 75]. Any challenges to the opinions contained in Ms. Bartmann's Supplemental Report under Rule 702 are thus properly considered herein.

will help the trier of fact to understand the evidence or to determine a fact in issue," (b) "the testimony is based on sufficient facts or data," (c) "the testimony is the product of reliable principles and methods," and (d) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Upon its promulgation, the Advisory Committee explained that "[a]n intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical, or other specialized knowledge." Fed. R. Evid. 702 advisory committee's note to 1937 rule.

It is well-settled that trial courts are charged with the responsibility of acting as gatekeepers of expert testimony to ensure that expert testimony or evidence admitted is not only relevant, but also reliable. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–152 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588–89 (1993). To fulfill that gatekeeper function, courts within the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") conduct a two-part inquiry. First, the Court considers whether the expert's proffered testimony has a reliable basis in the knowledge and experience of his or her discipline by conducting a preliminary inquiry into the expert's qualifications and the admissibility of the proffered evidence, *i.e.*, whether the reasoning or methodology underlying the testimony is valid. *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1082 (D. Colo. 2006) (citing *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232-33 (10th Cir. 2004)). Second, the Court considers whether the proposed testimony is sufficiently relevant to the issues presented to the factfinder. *See id*. The party offering the expert opinion bears the burden of establishing its admissibility, including the foundational requirements, by a preponderance of the evidence. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009); *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008).

"Generally, the district court should focus on an expert's methodology rather than the conclusions it generates." *Dodge v. Cotter Corp*., 328 F.3d 1212, 1222 (10th Cir. 2003). To that end, courts consider the following non-exhaustive factors in analyzing whether a particular expert opinion meets the requirements of Rule 702, *Daubert*, and their progeny:

> (1) whether the opinion at issue is susceptible to testing and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community.

*Id*. The Court's analysis is opinion-centric, rather than expert-centric. *See United States v. Nacchio*, 608 F. Supp. 2d 1237, 1251 (D. Colo. 2009). This standard controls the Court's consideration of Plaintiff's Motion.

## ANALYSIS

Before directly addressing the Parties' arguments, the Court notes that there is some ambiguity as to the precise relief Plaintiff is seeking. He identifies the six specific opinions that he requests be excluded in the body of his Motion[3] [Doc. 52 at 3 (listing three opinions contained in Ms. Bartmann's initial report and three opinions contained in her supplemental report)], but concludes both his Motion and Reply by requesting "that the Court strike Cynthia Bartmann's report *in its entirety*," [*id.* at 14 (emphasis added); Doc. 61 at 9]. The Parties do not extensively address the issue, though Defendant notes the discrepancy in its Response. [Doc. 59 at 1–2]. As

---

[3] Plaintiff interchangeably requests that certain opinions be "stricken" or "excluded." *E.g.* [Doc. 52 at 3 (requesting that the Court "strike" opinions from Ms. Bartmann's initial report and to "exclude" opinions from her supplemental report); Doc. 52 at 14 (requesting that the Court "strike [Ms.] Bartmann's report in its entirety")]. For the avoidance of doubt, the Court notes that it construes Plaintiff's instant Motion solely as one arising under Rule 702 of the Federal Rules of Evidence, not as a motion to strike under any other applicable Rule of Evidence or of Civil Procedure. Indeed, this Court denied Plaintiff's Motion to Strike Portions of Defendant's Fifth Supplemental Expert Disclosures directed, *inter alia*, at Ms. Bartmann's supplemental report on June 9, 2022. [Doc. 73].

explained below, and as the Court previously denied Plaintiff's request to strike Ms. Bartmann's Supplemental Report under Rule 37 of the Federal Rules of Civil Procedure [Doc. 73], the Court concludes that exclusion of the six opinions is not justified under Rule 702.  It accordingly need not consider whether the wholesale exclusion of Ms. Bartmann's reports is warranted.  With that in mind, the Court turns to a review of the challenged opinions contained in Ms. Bartmann's Initial Report and Supplemental Report.

## I.    Initial Report

### A.    Employability and Potential Earnings Analysis

Plaintiff first argues that "Ms. Bartmann's entire Employability and Potential Earnings Analysis" should be excluded for "[l]ack of qualification, reliability, methodology, [and] sufficiency of data."[4]  [Doc. 52 at 3].  This constitutes the tenth section of Ms. Bartmann's report.  First, relying on Dr. Fall's medical opinions, Ms. Bartmann concluded that Plaintiff could return to his preinjury employment—that is, as a driver.  [Doc. 53-2 at 14].  As Plaintiff was let go by his former employer, Ms. Bartmann determined that at least two companies were actively hiring drivers.  [*Id.*].  Second—"to be conservative"—Ms. Bartmann considered certain work restrictions outlined by Dr. Reinhard that would prevent Plaintiff from returning to driving.  [*Id.* at 14–15].  Because Plaintiff had mentioned that he had "excellent customer service skills" and that his prior job as a driver was "actually a sales position," Ms. Bartmann contacted at least three employers with job availability in customer service/sales positions.  [*Id.* at 15].  Her third step was to

---

[4] The Court notes that some of these categories appear to collapse into each other; for example, while attacking "reliability" and "methodology" separately, Plaintiff's arguments present flawed methodology as a cause of unreliability.  *E.g.* [Doc. 52 at 9 ("Ms. Bartmann uses *flawed methodology* to perform a transferrable skills analysis, making her opinions regarding Mr. Cerceres' future employment prospects *unreliable*." (emphasis added))].  The Court addresses these categories separately where possible, but recognizes that a discussion of Ms. Bartmann's methodology inevitably implicates the reliability of that methodology.

determine wages for customer service and sales representatives, for which she cited to the Colorado Department of Labor's Labor Market Information ("LMI").  [*Id.* at 15–16].  Finally, she assessed "placeability" and expressed her opinion that Plaintiff "has a variety of vocational options" and that "[t]here is an excellent job market for his skills in the Denver metro labor market."  [*Id.* at 16].  She explains that this four-step process is "standard in the industry in completing vocational evaluations."  [*Id.* at 16].

As noted, Plaintiff attacks these opinions on a number of grounds.  First, he claims that Ms. Bartmann is not qualified to offer her opinions.  [Doc. 52 at 5–6].  He contends that she "blurs the role of physician and vocational expert," and that she essentially offers medical opinions when she offers opinions "on whether Mr. Cereceres is able to return to work."  [*Id.* at 5, 7].  Mr. Cereceres argues that vocational experts must rely on medical opinions in reaching their opinions regarding work restrictions, s*ee* [*id.* at 5 (explaining that "the job of the vocational expert *should* be to calculate [Plaintiff's] losses based upon the[] differing opinions" of medical experts)].  First, it bears noting that Ms. Bartmann expressly disclaimed offering any medical opinions in this matter.  [Doc. 53-3 at 13:1–2].[5]  Plaintiff's issue with Ms. Bartmann's qualifications is therefore not that she is unqualified because she used medical opinions in her analysis, but that she used the *wrong* medical opinions.

Contrary to Mr. Cereceres's argument that Ms. Bartmann "completely ignores Dr. Reinhard's opinions," [Doc. 52 at 5], Ms. Bartmann considered both Dr. Fall's opinion that Plaintiff could return to his pre-injury work without restrictions *and* Dr. Reinhard's opinions regarding necessary work restrictions that would preclude work as a driver.  [Doc. 53-2 at 14–15].

---

[5] While the Court cites to the docket number and the page numbers assigned by the District of Colorado's Electronic Case Filing ("ECF") system for all other documents, citations to deposition testimony reference the page number and lines stamped on the original transcript.

In her Initial Report, Ms. Bartmann recounted some of Dr. Reinhard's findings with respect to Plaintiff's medical condition. [*Id.* at 6–7]. In addition, she discussed Dr. Reinhard's recommended work restrictions for Mr. Cereceres. [*Id.* at 8–9]. She then noted that "[i]t appears that Dr. Reinhard . . . relied on the information from Mr. Cereceres and not the objective video that shows what really happened. Therefore, it appears that [he is] basing [his] opinions on incorrect information." [*Id.* at 9]. She further recognized that Dr. Reinhard currently recommends no lifting over 20 pounds. [*Id.* at 12].

Plaintiff attempts to draw a finer distinction in pointing to three lines of deposition testimony in which Dr. Reinhard "unequivocally" testified that Plaintiff is unable to work at all. [Doc. 53-6 at 61:20–22 ("Q. In your expert opinion, does Mr. Cereceres have injuries that prevent him from working? A. Yes.")]. Yet this question falls squarely within a line of questioning regarding work restrictions, and how psychiatrists like Dr. Reinhard assess what work restrictions are appropriate. *See* [*id.* at 61:7–19]. In context, it is unclear whether Dr. Reinhard was actually testifying that Plaintiff could perform no work of *any* kind, instead of being unable to return to his prior position that required him to unload product and stock frozen goods. *Cf.* [Doc. 53-2 at 12]. Even if he were, the fact that Ms. Bartmann does not address every line of Dr. Reinhard's deposition testimony in her report is not evidence that she is unqualified to offer opinions on Plaintiff's employability and potential earnings, particularly in light of her consideration of Dr. Reinhard's proposed work restrictions. Rather, such an omission would go to the weight a jury chooses to assign to Ms. Bartmann's opinion rather than its admissibility. *Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*, No. 10-cv-02516-WJM-KLM, 2014 WL 4651643, at *5 (D. Colo. Sept. 18, 2014) (finding that the defendant's argument that an expert

analyzed the wrong data "goes to the weight the jury should afford [the expert's] opinions rather than to their admissibility.").

Plaintiff also alleges that Ms. Bartmann's opinions are unreliable because she failed to consider functional and cognitive limitations outlined by Dr. Reinhard and Sherry Young, an occupational therapist.  [Doc. 52 at 7].  Nevertheless, it appears that Ms. Bartmann expressly considered the opinion of Dr. Reinhard regarding work limitations and assessed Plaintiff's transferrable skills as a result of that consideration.  [*Id.* at 14–15].  As she explained at her deposition, she places more reliance on physician assessments than the results of functional capacity evaluations like that performed by Ms. Young and deferred to a physician's assessment of work restrictions where the two conflict.  [Doc. 53-3 at 13:25–14:14].  Courts within this Circuit have repeatedly concluded that the mere fact that different experts reach different conclusions when reviewing the same body of evidence is not a proper basis for exclusion.  *A-W Land Co., LLC v. Anadarko E&P Co. LP*, No. 09-cv-02293-MSK-MJW, 2017 WL 4161278, at *3 (D. Colo. Sept. 20, 2017) (denying motion to exclude where experts disagreed regarding certain findings and assumptions and reasoning that "those criticisms go to the weight that the factfinder should give that opinion, not to its admissibility); *Thompson v. Kinder Morgan Altamont, LLC*, No. 2:15-cv-00623-JNP-BCW, 2018 WL 5257631, at *4 (D. Utah Oct. 22, 2018) (declining to "crown the winning expert" where experts had "different interpretations of a body of literature that is capable of giving rise to reasonable disputes").  So too here.

Plaintiff also claims that Ms. Bartmann employs a flawed methodology in her transferrable skills analysis, leading to unreliable conclusions regarding Plaintiff's future employment prospects.  [Doc. 52 at 9–11].  Plaintiff notes that experts "commonly rely on the Dictionary of Occupational Titles, or other standardized resources to determine transferrable skills."  [*Id.* at 9].

Whether or not this is the case, neither Plaintiff nor this Court have located any case suggesting that the use of a particular dictionary or methodology is required when assessing the transferability of skills. To the contrary, "it is up to the jury to decide whether the expert used the best or most reliable methodology, what weight to accord to his testimony and which of competing experts' opinions should be credited." *Cook*, 580 F. Supp. 2d at 1085.

Plaintiff also suggests that Ms. Bartmann simply "made up" the skills she believes that Plaintiff is capable of performing. [Doc. 52 at 10]. But as she noted in her report, the skills she employed in her transferability analysis were drawn from her interview with Plaintiff. [Doc. 53-2 at 15]. Without any standard methodology for conducting a transferrable skills analysis, and with a detailed explanation of how Ms. Bartmann undertook her analysis—including a review of the entire record and her interview with Plaintiff—the Court is unpersuaded that her transferable skills analysis is sufficiently unreliable so as to justify exclusion. *Murphy-Sims v. Owners Ins. Co.*, No. 16-cv-00759-CMA-MLC, 2018 WL 8838811, at *7 (D. Colo. Feb. 27, 2018) (declining to exclude expert evidence where expert provided "a sufficient description of his underlying methodology, and a report identifying the basis for, and the facts and factors utilized in supporting his opinion," including "meeting with Plaintiff, discussing her symptoms, and providing her with medical treatment").

Finally, Plaintiff argues that Ms. Bartmann employed a flawed methodology in conducting job market research and failed to consider an adequate sample size, thereby rendering her opinions unreliable. [Doc. 52 at 11]. Plaintiff points out that she cites only five businesses in her Initial Report, two in relation to driver positions and three in relation to sales and customer service positions. [*Id.* at 11–12]. Plaintiff claims that there is "no rhyme or reason [as] to how these particular businesses were selected," and that "[f]or all we know, she selected three jobs at the top

end of the potential wage spectrum to support her conclusion that [Plaintiff] would not lose future wages." [*Id.* at 12]. He also contends that Ms. Bartmann did not explain how these roles fit within her own transferrable skills analysis, or how one would test her methodology in selecting and calling businesses. [*Id.* at 12–13].

In considering driver positions, Ms. Bartmann not only reviewed open positions at Nexus Staffing Solutions and US Foods, she also examined the demand for drivers using the Colorado Department of Labor's LMI, concluding that drivers were in medium demand with a stable outlook. [Doc. 53-2 at 14]. She noted that the average driver salary was $62,143 annually. [*Id.*]. Turning to her market research of positions for which Plaintiff possessed transferrable skills, Ms. Bartmann specifically noted that Plaintiff was not limited to the three roles she singled out and that they were presented only "as examples of employment opportunities" that would "meet [Plaintiff's] work restrictions and vocational skills." [*Id.* at 15]. She then went on to use the Colorado Department of Labor's LMI to analyze wages and opportunities in the sales and customer service sectors. [*Id.*]. Whatever purported inadequacies Plaintiff has identified in Ms. Bartmann's market research are appropriate subjects for cross examination and may affect the weight that the jury assigns to her analysis. *See, e.g.*, *Jaffrey v. PorterCare Adventist Health Sys.*, No. 15-cv-02297-NYW, 2017 WL 5624572, at *7 (D. Colo. Nov. 22, 2017) ("While Defendant can certainly challenge the rigor of, or conclusion drawn, from [the expert's] informal survey, those criticisms are more properly directed at the weight, rather than the admissibility, of that opinion."); *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01-cv-01644-REB-CBS, 2010 WL 3522416, at *4 (D. Colo. Sept. 1, 2010) (concluding that expert with knowledge of real estate brokers and agents, and who adequately explained the factual and analytical bases for his opinions, had offered admissible opinions, and reasoning that "[a]ny weakness in [the expert's] expertise, facts, or rationale go to

the weight to be accorded to his opinion"). But the mere fact that Ms. Bartmann could have contacted more businesses, could have performed more independent market research, or could have selected businesses at random does not justify exclusion of the Initial Report's Employability and Potential Earnings Analysis on unreliability grounds. *See In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1249 (10th Cir. 2014) (affirming district court's admission of expert testimony that party challenged based on "inappropriately selected variables and benchmark years based on what would yield the greatest damages.").

### B.     Use of Skills in Other Customer Service and Sales Positions

Plaintiff also seeks to exclude a portion of a particular sentence from the Employability and Potential Earnings Analysis in Ms. Bartmann's initial report: "Mr. Cereceres can use these skills in other customer service/sales positions." [Doc. 52 at 3]. He claims exclusion is warranted for "[r]eliability, methodology, [and] sufficiency of data." [*Id.*]. The Court construes this argument as similar to that raised in connection with Ms. Bartmann's market research and transferrable skills analysis.

As explained above, excluding Ms. Bartmann's opinions regarding Plaintiff's transferrable skills and the positions those skills would allow for is not justified based on the record before this Court. To the extent that Plaintiff's argument is based on the underlying skills Ms. Bartmann mentions in the challenged sentence, she is clear that Plaintiff informed her of those skills himself. She reports that Plaintiff "indicated that his job" as a driver "required him to have excellent customer service skills and that it was actually a sales position." [Doc. 53-2 at 15]. She further noted that Plaintiff told her "that he was good at his job and increased revenue for the company," and that he acquired the following skills as a driver: "customer service, excellent communication skills, and how to drive new business." [*Id.*]. Taking these self-reported skills in customer service

and sales—and then applying them to conclude that Plaintiff could use those skills in customer service and sales jobs—does not warrant exclusion. *Murphy-Sims*, 2018 WL 8838811, at *7 (reasoning that "[t]he fact Defendant disagrees with the information utilized . . . does not render [the expert's] testimony inadmissible" following expert's meeting and discussion with Plaintiff).

### C.     Ability to Return to Work and Future Wage Loss

Plaintiff's last specific request with respect to the Initial Report is to exclude another portion of a sentence included in the Employability and Potential Earnings Analysis section: "I firmly believe that Mr. Cereceres is able to return to work in customer service and sales and should have no future wage loss.  I believe his past wage loss is limited to the time off from work during his medical treatment." [Doc. 52 at 3; Doc. 53-2 at 17].  Plaintiff attacks this opinion for its "[l]ack of qualification, reliability, methodology, [and] sufficiency of data." [Doc. 52 at 3].

Plaintiff's justification for excluding this statement is somewhat unclear.  First, with respect to Ms. Bartmann's alleged lack of qualifications to offer the challenged opinion, the Court can only rely on Plaintiff's general argument related to her lack of qualifications to offer medical opinions.  Ms. Bartmann considered the medical opinions of *both* Drs. Fall and Reinhard (as well as those of other physicians).  [Doc. 53-2 at 2–8 (detailing review of records by Drs. Vangeti, Draper, Pook, Aspegren, Chen, Aschberger, Hammerberg, Boyd, Geddes, Sacha, Hill, Ter Haar, Rinner, Paz, Zacharewicz, Reinhard, McAvoy, Mistry, and Fall)].  And in offering the opinion Plaintiff seeks to exclude, she is implicitly accepting *Dr. Reinhard*'s conclusion that certain work restrictions may prevent Plaintiff from returning to work as a driver.  While a vocational expert like Ms. Bartmann may be unqualified to offer medical opinions, she is qualified to offer opinions within her experience that are *based* on factual predicates provided by medical experts.  *See Rosenbaum v. Hitchcock*, No. CIV-16-380-HE, 2017 WL 6003109, at *2 (W.D. Okla. July 24,

2017) (denying motion to exclude where vocational expert was not "expressing medical opinions of his own, but" rather "basing his estimates and projections on the assumption that other medical experts have established whether plaintiff will be able to obtain future employment").

With respect to reliability, methodology, and the sufficiency of data, the Court construes Plaintiff as again challenging Ms. Bartmann's transferrable skills analysis and the methodology behind calculating future wages. But, as before, the Court is not persuaded that Ms. Bartmann's transferrable skills analysis was unreliable. There remains no standard methodology for analyzing transferrable skills, and Ms. Bartmann based her analysis on Plaintiff's own averments. And while Ms. Bartmann was certainly free to contact more businesses and cite from additional statistical resources in analyzing the availability and salary of jobs in the customer service and sales spheres, the sufficiency of her analysis is a question of weight rather than admissibility. Put simply: whether Ms. Bartmann's methodology was the best or most reliable is a question for the jury, not the Court. *Cook*, 580 F. Supp. 2d at 1085. As such, the Court respectfully concludes that the three portions of Ms. Bartmann's Initial Report challenged by Plaintiff should not be excluded under Rule 702.

## II.    Supplemental Report

Given that the Court denied Plaintiff's Motion to Strike Ms. Bartmann's Supplemental Report under Federal Rule of Civil Procedure 37, *see* [Doc. 73], the Court turns to consider whether three discrete portions of the Supplemental Report should be excluded under Federal Rule of Evidence 702.

### A.    Overwhelming Medical Evidence and Permanent Work Restrictions

Plaintiff first seeks to exclude the entire "Work Restrictions" section of Ms. Bartmann's Supplemental Report on the grounds that she lacks the qualifications to offer her opinion and that

she also lacks sufficient facts and data to do so.[6]  [Doc. 52 at 3].  The Work Restrictions portion of her Supplemental Report is brief; Ms. Bartmann discusses physical work restrictions and cognitive restrictions and juxtaposes evidence from two neuropsychologists and two neurologists who did not provide for any cognitive restrictions against evidence proffered by Ms. Young following her functional capacity evaluation.  [Doc. 53-4 at 5–6].

First, with respect to Ms. Bartmann's qualifications, the Court considers whether she is improperly offering a medical opinion.  Here again, the Court, Plaintiff, and Defendant all appear to agree that vocational experts *should* review medical opinions in reaching their own opinions regarding work restrictions.  [Doc. 52 at 5; Doc. 59 at 5–6].  That appears to be what Ms. Bartmann has done in her work restrictions analysis.  With respect to physical work restrictions, Ms. Bartmann employs Dr. Reinhard's conclusions (based on the functional capacity evaluation performed by Ms. Young).  [Doc. 53-4 at 5].  With respect to cognitive work restrictions, Ms. Bartmann notes that four physicians provided opinions on Plaintiff that did not include any cognitive work restrictions; she found that this evidence, weighed against the conclusions of one occupational therapist, did not support cognitive work restrictions.  [*Id.* at 6].  In other words, Ms. Bartmann is acting as Plaintiff believes a vocational expert should: she is "using an objective methodology to determine what [Plaintiff's] physical and cognitive limitations are."  [Doc. 52 at 9].  Vocational experts may weigh evidence provided by medical experts without providing medical opinions of their own; that is what Ms. Bartmann is qualified to do—and has done—here. *Rosenbaum*, 2017 WL 6003109, at *2.

---

[6] Plaintiff singles out a portion of one sentence, though he moves for exclusion of the entire section: "I believe that the overwhelming medical evidence does not support permanent work restrictions." [Doc. 52 at 3; Doc. 53-4 at 6].

Second, with respect to the reliability of her methods and the sufficiency of her data, Ms. Bartmann detailed how she decided which set of physical work limitations to use and how she decided *not* to use Ms. Young's cognitive limitations in determining any cognitive work restrictions. [Doc. 53-4 at 5–6]. Plaintiff does not speak to specific flaws in Ms. Bartmann's methodology, and it is entirely unclear what data in the Work Restrictions section of the Supplemental Report that Plaintiff believes is unreliable. The Court's role is not to "make [Plaintiff's] arguments for him," *Walters v. Wal-Mart Stores, Inc.*, 703 F.3d 1167, 1173 (10th Cir. 2013), particularly in a case where Plaintiff is represented by counsel. *Cf. Mann v. Boatright*, 477 F.3d 1140, 1148 n.4 (10th Cir. 2007) ("While we generally construe pro se pleadings liberally, the same courtesy need not be extended to licensed attorneys." (citation omitted)). Without any argument as to the particular flaws in Ms. Bartmann's methodology concerning work restrictions, or in the sufficiency of her data, exclusion is not warranted.

**B.      Employability/Vocational Analysis**

Plaintiff next asks the Court to exclude the entire "Employability" section of Ms. Bartmann's Supplemental Report. [Doc. 52 at 3]. As an initial matter, it bears noting that there is no "Employability" section of Ms. Bartmann's Supplemental Report. *See* [Doc. 53-4]. Plaintiff identifies this section as stretching from page six to page nine of the Supplemental Report, however, which is the same range covered by Ms. Bartmann's "Vocational" section. [*Id.* at 6–9]. As such, the Court construes Plaintiff's Motion as requesting exclusion of the "Vocational" section.

In the Vocational analysis, Ms. Bartmann begins by detailing two businesses she contacted regarding sales positions that would accommodate Dr. Reinhard's proposed work restrictions: Cobblestone Auto Spa and Xclusive Services. [Doc. 53-4 at 6]. She also notes four companies

that were advertising for sales or manager training positions.  [*Id.* at 7].  As in her Initial Report, she notes that these positions were not intended to be exclusive; "rather, they serve of [sic] example of employment opportunities for" Plaintiff.  [*Id.*].  She then reiterates her belief that "the overwhelming medical documentation would indicate that [Plaintiff] does not have work restrictions," citing to the opinions of Drs. Fall, Morgenstern, and Boyd.  [*Id.*].  Despite that conclusion, she opines that—even assuming that Dr. Reinhard's and Ms. Young's proposed work restrictions were correct—Plaintiff could return to work immediately in a sales or customer service position.  [*Id.* at 8].  Finally, Ms. Bartmann criticizes Mr. Sidlow's updated vocational evaluation of September 17, 2021, as well as his conclusions.  [*Id.* at 8–9].  She expresses discomfort with the notion that his report's authorship was a "collective effort" and disagrees that she only considered the opinions of Drs. Morgenstern and Fall in reaching her conclusions.  [*Id.*].

Plaintiff argues that the Vocational section should be excluded pursuant to Rule 702 because the opinions contained therein are unreliable, are based on flawed methodology, and lack a sufficient foundation in facts and data.  [Doc. 52 at 3].  Plaintiff argues that the market research included in the Supplemental Report suffers from the same flaws as that contained in the Initial Report.  [*Id.* at 13].  Plaintiff also claims that "yet again, there is no analysis or explanation of how these specific jobs fit [Plaintiff's] skills and abilities, except for a vague reference to sales positions."  [*Id.*].  In Plaintiff's view, "[t]his complete lack of any explicable methodology renders these opinions wholly unreliable."  [*Id.*].

The Court respectfully disagrees.  First, as to methodology, Ms. Bartmann includes more than a vague reference to "sales" positions in her Supplemental Report.  She describes, in some detail, the responsibilities of the positions she references at Cobblestone Auto Spa and Xclusive Services, [Doc. 53-4 at 6–7], and is clear that Ms. Bartmann's research into both positions was

based on new medical information provided by Dr. Reinhard.  The next four companies she lists advertise "for sales or manager training positions," and all clearly involve sales or customer service work.  [*Id.* at 7].  The Court is satisfied that this degree of detail is sufficient to explain how these roles accommodate Plaintiff's transferrable skills and abilities.  Any remaining questions regarding the reliability of Ms. Bartmann's methodology are questions of weight, not admissibility.  *Jaffrey*, 2017 WL 5624572, at *7.

Second, as to the sufficiency of facts and data, Plaintiff does not offer any number of businesses or precise methodology that he believes would clear Rule 702's evidentiary threshold. The Court has not independently located such a number or methodology.  In any event, it remains firmly within the purview of the jury to determine what weight to assign to Ms. Bartmann's opinion given the number of businesses she contacted and the statistical information she relies on.  *See, e.g.*, *Hardy v. Union Pac. R.R. Co.*, No. 10-cv-01880-REB-MJW, 2011 WL 5295199, at *3 (D. Colo. Nov. 2, 2011) (finding that "[t]o the extent [the expert's] facts and data . . . may be inaccurate, incomplete, or otherwise imperfect, those flaws go to the weight to be ascribed to his opinions, and not to their admissibility.").

### C.        Ability to Work in Customer Service and Sales

Plaintiff finally requests that the Court exclude a portion of a sentence encompassed by the Vocational section of the report: "I firmly believe that Mr. Cereceres is able to work in customer service and sales."  [Doc. 53-4 at 8].  This is nearly identical to the sentence that Plaintiff requested be excluded from the Initial Report: "I firmly believe that Mr. Cereceres is able to return to work in customer service and sales and should have no future wage loss.  I believe his past wage loss is limited to the time off from work during his medical treatment."  [Doc. 52 at 3; Doc. 53-2 at 17].

Plaintiff argues that this opinion should be excluded for "[q]ualification, reliability, methodology, sufficiency of data, [and] improper rebuttal opinions."  [Doc. 52 at 3].

For many of the same reasons outlined *supra* in section I.C of this Order, the Court does not believe that any of these justifications are grounds for excluding Ms. Bartmann's opinion. First, with respect to Ms. Bartmann's qualifications, she is not offering a medical opinion in applying Dr. Reinhard's proposed work restrictions to develop a list of roles for which Plaintiff may be suited.  Proposing a set of jobs for which she believes Plaintiff may be well-suited—within the confines of Dr. Reinhard's proposed work restrictions—is within Ms. Bartmann's role as a vocational expert.  *Rosenbaum*, 2017 WL 6003109, at *2.

Second, Ms. Bartmann's opinion is not rendered unreliable due to her methodology or the sufficiency of her data.  While Plaintiff does not offer specific argument on this point, the Court believes Plaintiff is again challenging the transferrable skills analysis employed by Ms. Bartmann in compiling her Initial Report (and which she appears to employ again in her Supplemental Report).  [Doc. 53-2 at 14–15].  But the Court has already concluded that Ms. Bartmann's transferrable skills analysis was sufficiently reliable.  And, as discussed *supra*, the fact that Ms. Bartmann *could* have contacted more businesses and cited from additional resources in analyzing the availability and salaries of different positions, the sufficiency of her underlying facts and data speak to weight rather than admissibility.  *Cartel*, 2010 WL 3522416, at *4 ("Any weakness in [the expert's] expertise, facts, or rationale go to the weight to be accorded to his opinion.").

Finally, Plaintiff argues that the contested excerpt constitutes an improper rebuttal opinion. [Doc. 52 at 3].  As a preliminary matter, Rule 26 of the Federal Rules of Civil Procedure governs the propriety of rebuttal expert opinions.  A proper rebuttal expert opinion is one offered "solely to contradict or rebut evidence on the same subject matter identified by another party" through that

party's affirmative expert disclosures.  Fed. R. Civ. P. 26(a)(2)(D)(ii).  This Motion is not raised

under Rule 26, however, and so the Court will not employ a Rule 26 analysis to determine whether

Ms. Bartmann's opinion is improper.

Yet for the avoidance of doubt, the Court notes that rebuttal evidence in general "is

evidence which attempts to 'disprove or contradict' the evidence to which it is contrasted."

*Tanberg v. Sholtis*, 401 F.3d 1151, 1166 (10th Cir. 2005) (quoting *Evidence*, Black's Law

Dictionary (7th ed. 1999)).  "When a party opens the door to a topic, the admission of rebuttal

evidence on that topic becomes permissible."  *Id.* (citation omitted).  "Permissible does not mean

mandatory, however; the decision to admit or exclude rebuttal testimony remains within the trial

court's sound discretion."  *Id.*

Plaintiff does not elaborate on this ground for exclusion or address whether the Court may

entertain such an argument under Rule 702 of the Federal Rules of Evidence.  *See generally* [Doc.

52].  Nor does Plaintiff explain why Ms. Bartmann's opinion that he may perform work in the

customer service or sales sectors renders her opinion improper.  Indeed, Plaintiff's ability to

work—with or without restriction—is contested in this matter, and Plaintiff's own briefing

suggests that he disagrees with Ms. Bartmann's contention that he is able to work even in customer

service or sales roles.  *E.g.* [*id.* at 9–11 (arguing that Ms. Bartmann's opinion regarding Plaintiff's

return to work in customer service or sales was unreliable)].  And even if that were not the case,

Plaintiff has not directed the Court to the specific expert disclosures or reports that he believes

demonstrate the impropriety of Ms. Bartmann's opinion.  The Court will not construct Plaintiff's

arguments for him, *Walters*, 703 F.3d at 1173, and does not believe excluding Ms. Bartmann's

challenged opinion is justified here.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that:

(1)    Plaintiff's "Motion to Exclude the Opinions of Cynthia Bartmann Pursuant to Fed.

R. Evid. 702" [Doc. 52] is **DENIED**.

DATED:  December 14, 2022              BY THE COURT:

_____
Nina Y. Wang
United States District Judge